UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-CV-00850-FDW

| | |
|---|---|
| CHARLES D. WATTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff Charles D. Watts's Motion for Summary Judgment (Doc. No. 11) filed on April 25, 2017, and Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 15) filed on July 26, 2017. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Supplemental Social Security Income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (Doc. No. 11) and GRANTS the Commissioner's Motion for Summary Judgment (Doc. No. 15).

## I. BACKGROUND

Plaintiff filed an application for Title XVI disability benefits on July 23, 2012, alleging disability (Tr. 272). After his application was denied initially and upon reconsideration (Tr. 161, 169), Plaintiff requested a hearing (Tr. 174). At the hearing, the ALJ issued a favorable decision, which was vacated and remanded by the Appeals Council. (Tr. 136, 147). After the second

hearing on March 14, 2016, the ALJ issued a decision denying Plaintiff's application on April 19, 2016. (Tr. 12). Plaintiff's request for review by the Appeals Council was denied on October 19, 2016. (Tr. 2).

The ALJ determined Plaintiff was not disabled. (Tr. 35). The ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date and that he had the following severe impairments: "a history of Crohn's disease; a history of migraine headaches; a history of lower left extremity fracture with surgical repair of the left lower, extremity, including the left ankle; a history of bipolar disorder and depression." (Tr. 18). The ALJ determined that none of these impairments nor any combination of the impairments meet or medically equal a per se disabled medical listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 20). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC") to perform medium work as defined in 20 CFR §§ 404.1567(c), 416.967(c) with the following limitations:

> [Plaintiff] is limited to only occasionally climbing of ladders, ropes, or scaffolds; and he is further limited to jobs performing the simple, routine, repetitive tasks of unskilled work, performed at a non-production pace in a stable environment, with only occasional interpersonal interaction.

(Tr. 22). In response to a hypothetical that factored in the above limitations, the vocational expert ("VE") testified that Plaintiff could perform jobs in the national economy (Tr. 34). Thus, the ALJ concluded that Plaintiff was not disabled, as defined under the Social Security Act. (Tr. 35).

Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). Plaintiff claims that the ALJ's decision should be reversed because the

2

ALJ failed to provide specified work related mental functions in the RFC and improperly rejected medical opinions.[1]

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here

---

[1] Plaintiff has not argued that there is insufficient evidence to support the ALJ's decision, but the Court nevertheless summarizes the sufficient evidence supporting the ALJ's decisions and concludes herein that there is sufficient evidence to support the ALJ's decision.

3

conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996

4

> WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

In this case, the ALJ determined that Plaintiff was not disabled because his impairments did not meet or equal the "paragraph B or C" criteria in step three and that jobs for an individual with claimant's age, education, work experience, and RFC were available in the national economy

5

in step five. (Tr. 20-22, 34-35). On appeal to this Court, Plaintiff assigns error to the ALJ's assessment of Plaintiff's RFC as to his mental impairments and to the ALJ's rejection of parts of the medical opinions of Dr. Eugene Reynolds, II and the state agency psychological consultants. (Doc. No. 12 at 5-18). The Court disagrees. The ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision.

### A. Mental Impairments

Relying on <u>Mascio v. Colvin,</u> Plaintiff argues that this case should be remanded because the ALJ's failure to account for or explain why it did not account for Plaintiff's mental impairments in the Plaintiff's RFC. (Doc. No. 12 at 5-12). Plaintiff argues that the ALJ erred as to Plaintiff's moderate impairment with regard to concentration, persistence, or pace; moderate impairment in social functioning; and mild impairment in activities of daily living. (Doc. No. 12 at 6-12). The Commissioner argues that this case is distinguishable from <u>Mascio</u> because the ALJ provided the necessary rationale and explanations for his determination of Plaintiff's RFC. (Doc. No. 17 at 7-8). The Commissioner also argues that many of the insufficiencies alleged by Plaintiff do not address physical or mental limitations alleged by Plaintiff and Plaintiff has not cited the record to support his contention that there are limitations to his ability to work. (Doc. No. 17 at 9-10).

When determining a claimant's RFC, an ALJ reviews all the relevant evidence of record, including medical determinable impairments that are not deemed severe, 20 C.F.R. § 404.1545 (a)(1)-(2), and analyzes the impact of the claimant's impairments on the claimant's work activity on a regular and continuing basis, 20 C.F.R. § 404.1545 (a)(4), (b)-(e); <u>see also</u> SSR 96-8p; <u>Lewis</u>, 858 F.3d at 862 (citing <u>Mascio</u>, 780 F.3d at 635). However, no analysis of the impact of an impairment on a specific function is required if such function is irrelevant or uncontested. <u>Mascio</u>, 780 F.3d at 636 (holding that remand is not necessary for the lack of a function-by-function

6

analysis of irrelevant or uncontested functions). Further, if there is "no allegation of a . . . restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8p. An ALJ concludes the analysis by issuing a finding of the claimant's RFC—the most the claimant can do despite the limitations on the claimant's ability to work created by the claimant's impairments. 20 C.F.R. § 404.1545 (a)(1).

### i. Concentration, Persistence, and Pace

Plaintiff assigns error to the ALJ's failure to make a finding on Plaintiff's ability to stay on task on account of the moderate difficulties in concentration, persistence, and pace found in step three. (Doc. 12 at 7). Plaintiff cites Mascio for the proposition that "only a determination of [Plaintiff's] ability to stay on task would account for his limitation in concentration, persistence, or pace." (Doc. No. 12 at 8). This proposition, however, misstates the holding in Mascio. In Mascio, the Fourth Circuit stated:

> [W]e agree with other circuits that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

Mascio, 780 F.3d at 638. The Fourth Circuit only concluded that an limitation in concentration, persistence, or pace is not addressed by a limitation in the RFC to "simple, routine tasks, or unskilled work." Id. The Fourth Circuit did not conclude that the only way to account for a limitation in concentration, persistence, or pace is to include in the RFC the language "ability to stay on task." Instead, the RFC must reflect the claimant's work functions as to this limitation

7

unless the ALJ explains why a limitation in concentration, persistence, or pace at step three does not translate into a limitation on the claimant's capacity to do work-related activities. Id.; see also SSR 96-8p. Here, the RFC indicated that Plaintiff was limited to "simple, routine, repetitive task of unskilled work, performed at a non-production pace in a stable environment." (Tr. 22). The ability to concentrate, persist, or maintain pace refers to the abilities to focus attention on work activities and to stay on task at a sustained pace. 20 C.F.R. pt. 404, subpt. P, app. 1, § 404 12.00(C)(3). Thus, a limitation to a non-production pace accounts for limitations in concentration, persistence, or pace found in step three. See, e.g., Mack v. Berryhill, No. 1:16-cv-290, 2017 WL 4295222, at *2 (W.D.N.C. Sept. 17, 2017); Linares v. Colvin, No. 5:14-cv-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015); see also Taylor v. Colvin, No. 3:14-cv-510, 2016 WL 1032345, at *7 (W.D.N.C. Mar. 15, 2016). As discussed by the ALJ in his analysis, this limitation is also supported by the State Agency Psychology Consultants conclusions that Plaintiff could perform "simple, routine, tasks of unskilled work in a nonproduction setting" (Tr. 33, 119, 131, 132), Physician Assistant Jeffrey Ellison's observation that Plaintiff's attention span and concentration were normal (Tr. 31, 1334), and Plaintiff's ability to perform a wide range of activities including performing music in public, completing household chores, traveling, shopping, attending church, socializing, working on a computer, watching a movie, and following written and spoken instructions (Tr. 21, 24, 61-62, 314-319). Thus, the Court concludes that the ALJ has applied the correct legal standards, accounted for the impairment in the RFC, and provided reasons in its analysis for the limitation, which is supported by substantial evidence.

### ii. Social Functioning

Plaintiff argues that limitation in the RFC of "only occasional interpersonal interaction" fails to fully explain and address the moderate difficulties in social functioning found in step three.

(Doc. No. 12 at 9-11). However, the ALJ's limitation, as supported by the ALJ's narrative analysis, addresses Plaintiff's moderate difficulties in social functioning—a claimant's capacity to interact independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. pt. 404, subpt. P, app. 1, § 404 12.00(C)(2). The record, as cited and discussed by the ALJ in his analysis, shows that Plaintiff cared for and lived with his mother until her death, lived with a roommate, performed publically in a band, sent emails, socialized with friends, attended church, and developed a relationship with and planned to visit an online acquaintance. (Tr. 32, 53-54, 61, 314-18, 404, 1284). The ALJ also relied on Mr. Ellison's observations and the state agency psychological consultants' conclusions. Mr. Ellison had observed that Plaintiff articulated well, displayed appropriate judgment in social situations, and exhibited an appropriate thought process (Tr. 31, 1334), and the state agency psychological consultants found that Plaintiff could function with low or minimal social demands (Tr. 33, 120, 131-32). Plaintiff has also not cited evidence in the record to suggest Plaintiff's functional limitations are more severe, such as "a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation," 20 C.F.R. pt. 404, subpt. P, app. 1, § 404 12.00(C)(2). Plaintiff further contends the ALJ must explain what it means by interpersonal interaction. The Court disagrees. The meaning of interpersonal interaction is not ambiguous: it covers all communication between people. See Interpersonal Definition, Oxford Dictionary, https://premium.oxforddictionaries.com/us/english/ (last visited Nov. 8, 2017) ("Relating to relationships or communication between people."). Thus, the ALJ's decision has provided "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence[.]" Monroe, 826 F.3d at 189 (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). From review of

the decision and record, the Court concludes that the ALJ has applied the correct legal standards and its decision is supported by substantial evidence.

### iii. Daily Activities

Plaintiff next argues that a mild impairment on his daily activities has not been addressed. (Doc. No. 12 at 11-12). However, the inclusion of "simple, routine, and repetitive tasks of unskilled work" in the RFC does address this limitation, see generally 20 C.F.R. § 404.1520a (d)(1) (limitation of mild is generally considered non-severe). Daily activities are considered to assess a plaintiff's ability to complete task in a work environment without supervision and direction. 20 C.F.R. pt. 404, subpt. P, app. 1, § 404 12.00(C)(1). Here, the ALJ analyzed the daily activities previously discussed and Plaintiff's ability without assistance to care for the family dog, to manage his mother and his finances, to perform yard work, to cook, to drive, and to walk. (Tr. 21, 24, 314-18). The ALJ also gives substantial weight to opinions of the state agency psychological consultants, who reviewed all the medical evidence and in their narrative descriptions of Plaintiff's functional limitation stated Plaintiff could perform simple routine and repetitive tasks of unskilled work. (Tr. 33, 119-20, 131). Therefore, the ALJ has provided a basis for the limitation, which is supported by substantial evidence. Additionally, Plaintiff has not cited to record evidence that Plaintiff's mild limitation on his daily activities would impact his abilities to perform other work functions. SSR 96-8p; see also 42 U.S.C. §§ 423 (d)(5)(A), 1382c (a)(3)(H)(i); 20 C.F.R. § 416.912 (a); Plumber v. Astrue, No. 5:11CV006-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) ("The claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC." (citations omitted)). Therefore, upon review of the record and the ALJ's analysis, the Court concludes that substantial evidence supports the ALJ's determination and the ALJ did not commit legal error

**B. Medical Opinions**

Plaintiff again relying on Mascio contends that the ALJ rejected medical opinions without sufficiently explaining the weight accorded them and this action renders the RFC so flawed as to warrant remand. (Doc. No. 12 at 12-13). First, Plaintiff alleges the ALJ gave "little weight to the opinions of consultative examiner Dr. Reynolds" and seems to argue that the ALJ's decision to discount some of Dr. Reynolds's conclusions without citing another medical opinion and without seeking additional information from Dr. Reynolds to resolve any apparent inconsistency or insufficiency is a reversible error. Plaintiff's argument, as pointed out by the Commissioner, mischaracterizes the ALJ's decision and attempts to impose legal requirements on the assessment of medical opinions not supported by statute, regulation, or precedent.[2] (Doc. No. 17 at 12-13). The ALJ, in fact, "[gave] most of Dr. Reynolds['s] objective medical findings great weight" but "gave his conclusions regarding claimant's functionality little weight[.]" (Tr. 26). The ALJ also weighed Dr. Reynolds's medical opinions in accordance with the factors in 20 CFR § 416.927(c) and unlike Mascio stated his reasons for this weight.

> First, it appears that in drawing his conclusions about the claimant's functionality, Dr. Reynolds has relied quite heavily on the claimant's subjective report of symptoms, particularly with regard to his description of symptoms of his Crohn's disease and migraines, and accepted uncritically as true most, if not all, of what the claimant reported. Yet, as will be explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Second, and relatedly, in comparing the claimant's presentation and reported symptoms during Dr. Reynolds' evaluation, particularly as related to his ability to stand and walk and his use of a cane for ambulation, the Administrative Law Judge finds the claimant did not accurately portray his usual level of functioning, and exaggerated his symptoms, and so Dr. Reynolds' conclusions were based in part on inaccurate information.

---

[2] Plaintiff has cited two unpublished Fourth Circuit Opinions, Fox v. Colvin, 632 F. App'x 750 (4th Cir. 2015) and Brown v. Colvin, 639 F. App'x 921 (4th Cir. 2016). The Fourth Circuit in Fox and Brown remanded back to the agency for the ALJ's failure to explain its application of a particular listing. In both cases, the ALJ analysis was conclusory as it merely acknowledged its consideration of the listings rather than addressing "why" he came to his conclusion. Brown, 639 F. App'x at 921-22; Fox, 632 F. App'x at 754-55. This case does not involve the application of a particular listing and, as explained herein, the ALJ has explained his conclusions.

11

> Third, Dr. Reynolds' conclusions are not entirely consistent with the objective findings of his own physical examination of claimant. For example, he restricted the claimant to lifting and carrying no more than 10 pounds on an occasional basis, although the claimant had no complaints of back pain, upper extremity limitation, or other loss of functionality, and did not exhibit any other abnormal musculoskeletal findings, apart from tenderness and limited range of motion in his left ankle and food. Finally, as discussed more fully below, the conclusions reached by Dr. Reynolds, based on his findings, are not entirely consistent with other medical evidence in the record, which demonstrates that the claimant is far more functional and less restricted that Dr. Reynolds concluded in his report.

(Tr. 26-27); see 20 CFR § 416.927(c)(3)-(4). The ALJ went on to explain why he came to this conclusion by discussing evidence on the record. For example, Plaintiff did not follow treatments prescribed by his medical providers, which could have controlled his symptoms. A claimant cannot receive benefits if following a physician's treatment would alleviate the symptoms and allow the claimant to work. See 20 CFR § 404.1530(a), (b) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Here, Plaintiff routinely failed to fill prescriptions to alleviate his ailments. (Tr. 27, 29-31, 65 (admitting that he was not getting medicine for Crohn's), 115 (failed to pick up medicine for migraine symptoms), 940 (has been out of medicine for migraines for months and never got refills), 1318 (did not have his migraine medicine), 1322 (ran out of his migraine medication), 1330 (explaining that nurse practitioner was "unwilling to prescribe controlled substance when [plaintiff] won't take other recommended meds as directed and hasn't since starting treatment"). Additionally, when advised by his medical providers, Plaintiff did not consult with experts or return for follow up care for his impairments. (Tr. 27, 33). In fact, Plaintiff had not been evaluated by an orthopedic since 2004-2005, by a gastroenterologist for his Crohn's disease since 2005-2007, or by a neurologist for his migraines

12

for the past 12 years. (Tr. 27). The ALJ also discussed the "dearth of any significant lower extremity complaints or findings" in Plaintiff's most recent appearances at the Emergency Room on October 4, 2015 and October 15, 2015 (Tr. 28-29, 1324 ("Musculoskeletal: Normal Range of motion . . . Normal gait"), 1348 ("Musculoskeletal: Normal range of motion)). Further, the ALJ pointed out Plaintiff's other activities, including standing to play music for as long as two hours a night, as contradicting a functional limitation of 15 minutes for standing and his drinking of soft drinks and wearing of seat belts, as contradicting his alleged unremitting diarrhea and abdominal discomfort. (Tr. 29-31, 753). Therefore, the ALJ has supported his conclusion with reasons and that allow meaningful review by the Court. There is also no requirement that the ALJ resolve an inconsistency or insufficiency by contacting the medical source or otherwise. To the contrary, 20 CFR § 416.920b(b)(1) acknowledges that the ALJ will see if he or she can determine whether claimant is disabled or not on the evidence he or she has even if there is inconsistent evidence. The Court finds no error requiring or justifying remand for further explanation.

Second, Plaintiff argues the ALJ must include all of the state agency psychological consultants' limitations in the RFC or elaborate on the omission if he gives their opinions substantial weight. (Doc. No. 12 at 15). Specifically, Plaintiff points to the rating by the state agency psychological consultants of Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances as moderately limited and the ability to accept instruction and respond appropriately to criticism from supervisors as moderately limited. This requirement is unsupported. Section I of the worksheet, which contains the questions referenced by Plaintiff, is intended to "ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal weekday or workweek on an ongoing,

appropriate, and independent basis." POMS DI 25020.010. In other words, Section I aids the consultant in reaching an opinion but does not reflect the consultant's ultimate opinion on functionality. (Tr. 119 ("The questions below help determine the individual's ability to perform sustain work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes.")). Instead, the narrative of the state agency psychological consultants in Section III state the opinion, and the ALJ uses this narrative opinion to determine the RFC. POMS DI 25020.010 ("It is the narrative written by the psychiatrist or psychologist in section III ("Functional Capacity Assessment") of form SSA-4734-F4-Sup that adjudicators are to use as the assessment of RFC. Adjudicators must take the RFC assessment in section III and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work."). Here, the ALJ properly relied on the state agency psychological consultant's narrative summaries, gave them substantial weight, and incorporated them into the RFC. (Tr. 22 (finding Plaintiff's RFC as "limited to jobs performing the simple, routine, repetitive tasks of unskilled work, performed at a non-production pace in a stable environment, with only occasional interpersonal interaction."; 119 ("Some deficits in sustained concentration, but [claimant] appears able to sustain sufficient attention to complete simple routine tasks for extended periods at a low production pace"; 132 ("Based on the totality of the evidence in file, there are limitations, but [claimant] appears capable of performing SRRTs in a low-stress setting with minimal social demands"); see also 20 CFR § 404.1545(c) ("A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, *may* reduce your ability to do past work and other work. (emphasis added)). Further explanation is not

14

needed for this Court to meaningfully review the ALJ's decision, which the Court finds is supported by substantial evidence and applies the correct legal standards.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED; the Commissioner's Motion (Doc. No. 15) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: December 4, 2017

Frank D. Whitney
Chief United States District Judge